## LEECH v. PROVOST.

### Appeal from Dubuque District Court — Tuesday February 26.

#### PURCHASE OF REAL ESTATE HELD TO BE IN TRUST.

PLAINTIFF seeks to set aside certain execution sales of several parcels of real estate, upon the alleged ground that defendant in purchasing

the same was acting as his trustee. He also asks that an accounting be had, and the amount of indebtedness from one to the other ascertained and settled. The defendant denies the trust relation, insisting that the sales were absolute, and that plaintiff is still largely his debtor.

It seems that, commencing in 1855 or 1856, and continuing for several years, defendant loaned and advanced to plaintiff, and for his use, large sums of money. From time to time he took mortgages, procured assignments of judgments, and other securities amounting to thousands of dollars. These mortgages were foreclosed, and under these, and the judgments so obtained, plaintiff's property was sold and bid in by defendant. Before thus purchasing, he was in receipt of certain rents, and after as well as before, he took possession of parts of the property. It also appears that he received money from other sources. All this property (except that known as the "Church property") is still in defendant's name. The "Church property," he sold in June, 1863, for $3,000, having purchased it under execution against plaintiff in favor of Beall and others, in August, 1862. (This property defendant did not own, but he had other liens upon the property to which it was prior.)

Plaintiff claims that the other defendant (the purchaser of this "Church property"), had notice of his equities, and that therefore this sale should be set aside. But if there was not such notice then he says, that the defendant (Provost) acted in bad faith in making the sale, that the property was worth very much more than $3,000, and he should, therefore, be held to account for its actual value. He also insists, that all these sales and foreclosures were in fraud of his rights, and that, in any event, defendant took and held the property in trust for plaintiff, that he has been fully paid, and asks that upon a final accounting he may be restored his property, offering to pay any balance, etc. All these positions and claims are denied by defendant. On the final hearing plaintiff's right to redeem was sustained, a balance found in defendant's favor of $76.91, the execution sales set aside, and both parties appeal.

*Monroe & Deery* for the plaintiff—*Adams & Robinson* for the defendant.

WRIGHT, J.—This case has been prepared with the utmost care. It involves property to a large amount, and the testimony is most voluminous and quite conflicting, and yet it presents none other than purely questions of fact. The law of the case is plain and not disputed. Without giving the testimony or discussing it in detail, we proceed to state our conclusions upon the several fact views discussed by counsel at bar.

I. And first, and of course principally, does defendant hold the property in trust, or did he purchase it in his own right for himself, without any obligation to account for the same to plaintiff? We answer, that plaintiff certainly has good reason to believe that defendant was to acquire and perfect the title to the property, and hold it as his

security for advances made, and money paid for plaintiff's use. Not only so, but we think that, taking the positive testimony upon the subject, in connection with the manifest confidence reposed by the parties in each other, and their correspondence, running through months and years, the trust relation is very fairly and conclusively established. Then again, the conclusion effectuates justice without wrong to any one, while a contrary result would be attended with the greatest injustice.

II. The leading issue being thus settled, we have only to inquire into certain items of the account which it is claimed were improperly allowed or rejected.

(a) The court below held, that defendant should account for the "church property" $3,500, or $500 more than the amount for which it was sold. Plaintiff maintains that this was less than the testimony warranted, while defendant insists that it was too much. It is agreed, if liable to account (and we have seen that he is), that he should be held for the actual value of the property, and nothing more. And after carefully weighing all the testimony on this subject, and there is much of it directed to this view, we have no hesitation in holding that he sold it for its full value, and should not be held to account for anything beyond the $3,000. The testimony tends to show that plaintiff's interest in the property (or that which defendant reported), was really worth less rather than more than the sum for which it was sold. Then he had the strongest motive (considering the amount of plaintiff's indebtedness, and the property held by him) to obtain the full value, and none whatever to sell at a sacrifice.

In this connection we remark that there is no testimony charging defendant's grantee and co-defendants with notice of plaintiff's equity. Indeed we do not understand that counsel urge the point with any confidence.

(b) One Cummings had a judgment against plaintiff. Defendant held a judgment against Barney & Co., and plaintiffs, upon a note made by B. & Co. to plaintiff, and indorsed by him to defendant, or at least as to which between himself and this co-defentant in the judgment, plaintiff was surety. B. & Co. obtained the control of the Cummings judgment, which was much larger than that against them in defendant's favor. Such negotiations were had, that defendant surrendered his judgment against B. & Co., and satisfied the same in consideration of $500, and an assignment to him of the judgment in favor of Cummings. Plaintiff now claims that before this transfer or exchange, he paid to defendant the full amount of the Barney judgment, and that it was therefore his property, and as such (by right of satisfaction), he could enforce it against the principal defendants. And based upon this assumption, in connection with some other facts, perhaps, he maintains that the purchase was for his use and benefit. Defendant on the other hand insists that he had not been paid, that he made the purchase for

himself, with his own resources, and is therefore entitled to enforce the collection of the whole amount against plaintiff. Upon the testimony our opinion is, that defendant had been paid from securities held by him, the full amount of the Barney & Co. judgment at the time he made the exchange, and that it was in equity the property of plaintiff. In addition to this, he made the exchange after he knew that plaintiff intended to insist upon this trust relation, after plaintiff himself had opened negotiations with Barney & Co. for the same purpose, and the purchase was hardly characterized by the good spirit which their relation obviously demanded. That B. & Co. claimed or supposed that the purchase would inure to plaintiff's benefit is also reasonably shown from the record.

(c) Defendant held plaintiff's notes, and as security therefor, the title to certain lands in Clayton, and other counties. He insists that certain notes paid him, and other money realized by him from other sources, should be applied at least to the extinguishment of the interest due on these notes, and this, he maintains, was the agreement of the parties. This claim was rejected in the court below, it being ordered, that none of the moneys received by defendant should be allowed on said land transaction. This order is correct, in our opinion, so far as it related to the notes named under their special contracts. The parties contemplated that they should be applied to the extinguishment of other demands. There was however, certain personal property sold by plaintiff to defendant, and which the referee in his report charges to defendant, of date May 4, 1861, amounting to $338, which we think should in part go to the extinguishment of the land notes, and this for these reasons: There was no agreement as to how this property should be applied. The defendant did apply $188.87 of the amount on one of the land notes, and $100 to another. There was nothing in this agreement of the parties, or in law to prevent such application. On the contrary, a letter of plaintiff's of July 1st, 1861, tends very strongly to show that it was thus applied by his direction and consent. It follows, therefore, that $288.87 of this amount should have been treated as applied on the land notes, leaving $49.13 to be credited in the accounting contemplated and denoted in this suit.

(d) It is objected that defendant, because of his bad faith and fraudulent conduct, is not entitled to *two per cent* interest upon his advances. To this it is sufficient to say, that this was the contract, and plaintiff in his petition, expressly offers to allow interest at this rate.

(e) Among the items allowed defendant are several for money paid in procuring insurance upon the property held by him. It is objected that he insured for himself and not for plaintiff. He acted, we doubt not, in this matter, so as the better to protect his interest and security. And yet, we think it is well established that it was for plaintiff's interest also, and that he was to repay all sums thus expended.

(*f*) Finally, as to costs. In the court below these were adjudged against the parties equally, and of this order plaintiff complains. After looking at all the facts, and the nature of the litigation, we are not disposed to interfere with this order. Plaintiff was not in all respects without blame. At the time he commenced his action he was largely indebted to defendant, extinguished very much by notes subsequently owing and which were charged to him to near the time of the decree. Upon the facts as we view them, and as above found, he is still largely a debtor. He made no tender of any amount. The costs were well adjudged.

Except as above indicated the decree below will stand in all respects approved. The case will be remanded that the court below may make the proper modifications. Plaintiff will pay the costs of this appeal.